**UNITED STATES OF AMERICA**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **CASE NO. 1:25-cr-07242** |
| **NNAMDI OPARA,** | ) | |
| **Defendant** | ) | |

## SENTENCING MEMORANDUM

The defendant, Nnamdi Opara, submits this memorandum and requests a sentence of 12 months of home confinement, followed by with three years of supervised release.

The defendant ("Mr. Opara") comes before the Court for sentencing after having pled guilty to a seven (7) count indictment alleging two (2) counts of Bank Fraud, in violation of 18 U.S.C. § 1344 and five (5) counts of Money Laundering, in violation of 18 U.S.C. § 1956.

Mr. Opara submits this sentencing memorandum to aid the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a). The U.S. Probation Office ("Probation") has calculated, under the U.S. Sentencing Guidelines (the "Guidelines"), a sentencing range of 27 to 33 months in prison. The government is recommending incarceration no higher than 27 months.

Mr. Opara believes that the United States Sentencing Guidelines (hereinafter "the Sentencing Guidelines" or "Guidelines") should not be used to determine his sentence in this

case, and respectfully requests that this Honorable Court impose a non-Guidelines sentence that is fair and substantially below any sentence suggested by the Guidelines.

**ARGUMENT**

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as other traditional sentencing factors, such as:

(1) the nature of the offense and history and characteristics of the defendant;

(2) the purpose of sentencing;

(3) the kinds of sentences available;

(4) the Sentencing Guidelines;

(5) pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among similar offenders; and

(7) the need to provide restitution to victims.

18 U.S.C. § 3553(a).

Nearly 20 years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The Guidelines are no longer "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Id.*; accord *Cunningham v. California*, 549 U.S. 270 (2007). The Court is to

impose its sentence after “mak[ing] an individualized assessment based on the facts presented” in each particular case. *Id*. The Court need not find “extraordinary circumstances to justify a sentence outside of the Guidelines range.” *Id. at 47*.

As one district court judge has put it, the Guidelines’ “most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula.” This is especially true in a economic crimes case such as this, where the sentencing range is ultimately determined by economic loss figures that accelerate the resulting sentencing range. This should be of particular significance to this Court because it is clear from the facts alleged that the person behind this scheme determined the amounts of money to be targeted and used Mr. Opara as a tool to secure this funds. As such, the Court should exercise its broad discretion and impose a sentence substantially below the statutory minimum.

**The Nature and Circumstances of the Offense**

**Offense Conduct**

In this case, Mr. Opara pled guilty to two (2) counts of Bank Fraud and five (5) counts of Money Laundering.

This case was but one piece out of a multi-faceted criminal enterprise led by a single mastermind behind it all. Mr. Opara was induced into allowing the unidentified mastermind to use his personal information to open and register a fake business and a bank account in Mr. Opara’s name. The mastermind escorted Mr. Opara to the bank to make sure Mr. Opara successfully deposited checks on two different occasions. The checks totaled $700,767.52.

**The History and Characteristics of the Defendant**

**Personal Life**

Mr. Opara is a 31 year old man whose life was completely turned upside down when the devil of the unknown mastermind made him into his own little patsy. Having grown up without a father, a father that died when Mr. Opara was a young boy, Mr. Opara established a very close relationship with his best friend Jil. Late in 2021, Jil suddenly passed away and this devastated Mr. Opara. He thereafter suffered from serious depression up until and including the time Mr. Opara was introduced to the mastermind at a gathering in Boston. So deep was this depression that Mr. Opara began to use drugs. Mr. Opara admits to attempting to commit suicide on more than one occasion. Is it any wonder that he was easy prey? To boot, Mr. Opara had started his own trading company which at the beginning was doing well. Then at some point during this personal turmoil, Mr. Opara lost $250,000 in trades. More devastation. More drugs followed. Mr. Opara's relationship with his child's mother began to decline. Mr. Opara's condition was such that he could see that he was being set up. The mastermind had created a buffer and that buffer was Mr. Opara. The mastermind ended up with all or most of the money and left a trail for the investigators that would only straight to Mr. Opara and no one else.

Mr. Opara is extremely remorseful and regrets his decision. Mr. Opara feels that he has let his family down. His mother and six beautiful sisters are all productive and responsible citizens here in the United States. The family boasts four pharmacists, a nurse, a health care administrator and a public health administrator as well. Their love and support for Mr. Opara has been steady and unbroken.

Mr. Opara is a tremendous father to his five year old son Jireh. Jireh lives with his mother in Fall River and despite the distance Mr. Opara endeavors to see his boy every single day. Despite her separation from Mr. Opara, Jireh's mother, Lizette Montalvo, remains loving and supportive to Mr. Opara.

These circumstances are put forth not to justify Mr. Opara's criminal conduct, but to highlight to the Court that the facts that make up the Statement of Conduct are indeed a complete and absolute aberration of the life Mr. Opara was previously living. This was a one time, only time, Mr. Opara will ever be involved in such conduct. It is more than reasonable for the Court to find that recidivism in this case is extremely unlikely. Mr. Opara comes from humble beginnings and has no prior record of convictions. He has learned his lesson and as a result the Court should find that incarceration will not better accomplish the goals of sentencing that a 12 month period of home confinement sentence or straight probationary period of supervised release for 24 months would.

The case of Eric Banks, the only other defendant involved in this scheme to be sentenced thus far, involved the theft of $2,470,982.87, more than three times the amount alleged in the matter at hand. Mr. Banks received a sentenced of 14 months of incarceration followed by 3 years of supervised release.

Respectfully submitted,

__/s/___John Benzan______________

John Benzan, Esq. BBO#555874
P.O. Box 620667
Newton Lower Falls, MA 02482
(617) 733-7723

johnbenzan@msn.com

June 29, 2026

**CERTIFICATE OF SERVICE**

I, John Benzan, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 29, 2026.

/s/ John Benzan.____________
John Benzan